Manley GREER, Plaintiff,

v.

SOUTH CAROLINA WILDLIFE AND MARINE RESOURCES DEPARTMENT, Defendant.

Civ. A. No. 3:85–2561–15.

United States District Court,
D. South Carolina,
Columbia Division.

Jan. 15, 1986.

Daryl G. Hawkins, Columbia, S.C., William E. Whitney, Union, S.C., for plaintiff.

Vance J. Bettis, Buford S. Mabry, Jr., Columbia, S.C., for defendant.

## ORDER

HAMILTON, District Judge.

This action is brought pursuant to the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA"). The matter is before the court on plaintiff's application for a preliminary injunction pursuant to Rule 65, Fed.R. Civ.P.

The plaintiff, a Conservation Officer since 1959 in the Law Enforcement Division of the South Carolina Wildlife and Marine Resources Department (hereinafter "SCW & MRD"), was required to retire on June 30, 1985, the end of the fiscal year in which he turned sixty-five (65) years of age. Plaintiff's retirement was mandated by S.C.Code Ann. § 9–1–1535 (Cum.Supp. 1984), which provides:

Conservation officers of the Law Enforcement section of the South Carolina Wildlife and Marine Resources Department shall be retired no later than the end of the fiscal year in which they reach their sixty-fifth birthday.

On September 20, 1985, plaintiff filed the present action challenging the validity of § 9–1–1535 under the ADEA. Plaintiff has filed the instant motion for preliminary injunction seeking reinstatement to his position as Conservation Officer pending a trial on the merits.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and the order of this court filed July 10, 1982, the matter was referred to United States Magistrate Cameron M. Currie for a report and recommendation on plaintiff's motion for a preliminary injunction. Magistrate Currie held a hearing on

plaintiff's motion on October 15, 1985 and on October 25, 1985 issued a report recommending that plaintiff's motion be denied. The plaintiff has now filed several objections to the magistrate's report and recommendation.

After a careful review of the record, including all exhibits, the memoranda of counsel, the applicable law and the magistrate's report, the court is of the opinion that the magistrate correctly concluded that plaintiff's motion should be denied. Thus, the magistrate's report is adopted and made part of this order by reference.[1]

Magistrate Currie utilized two discrete bases in resolving that injunctive relief was inappropriate in the instant case. First, she relied on the Supreme Court's admonition in *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) that injunctive relief in a governmental employee case should only be exercised in extreme cases. In addition, the magistrate applied the four factor balancing test set forth in *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir.1977), and determined that injunctive relief was unwarranted.

Plaintiff has filed several objections to the magistrate's October 25, 1985 report and recommendation, which will be addressed *in seriatim* by this court. Plaintiff's first objection is that "the magistrate erred in relying on *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), because the reasoning relied upon by the magistrate is dicta in the opinion and has nonetheless been inferentially overruled as applied to age discrimination cases by the United States Supreme Court decision in *Western Airlines, Inc. v. Criswell*, —— U.S. ——, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985)."

After a careful review of *Sampson* and *Western Airlines* this court must reject both plaintiff's characterization of the *Sampson* reasoning as mere dicta, and plaintiff's contention that *Sampson* has been "inferentially" overruled. In *Sampson* the plaintiff, a soon-to-be-discharged governmental employee, sought to enjoin her dismissal pending her administrative appeal to the Civil Service Commission. In concluding that a preliminary injunction should not have been issued in such a case, the Supreme Court isolated two factors supporting the denial of equitable relief: (a) that the government should be granted the widest latitude in the dispatch of its own internal affairs; and (b) that courts of equity are traditionally unwilling to enforce contracts for personal services. 415 U.S. at 83, 94 S.Ct. at 949–50. In contrast to plaintiff's characterization of the Supreme Court's reasoning as mere dicta, the court finds the Supreme Court's reasoning to have been the very *ratio decidendi* of the case. Moreover, Magistrate Currie correctly determined that the *Sampson* factors appeared in the instant case, and supported a denial of interim relief.

■ In addition, nothing in *Western Airlines* changes the analysis expounded in *Sampson*. *Western Airlines*, which was a commercial i.e., non-governmental employee case, did not even address the question of the appropriateness of injunctive relief, but instead dealt with the elements of a bona fide occupational qualification (BFOQ) defense. The appropriateness of injunctive relief is, however, a totally distinct consideration.[2] Therefore, this court finds nothing in *Western Airlines* to change the Supreme Court's mandate in *Sampson* that

---

**1.** With the exception of some superfluous language appearing in the magistrate's report, which is discussed further herein, *see infra* p. 906, the court adopts Magistrate Currie's report in full.

**2.** This statement must, however, be qualified to a degree. The court recognizes of course that there is some interplay between the BFOQ defense and the appropriateness of injunctive relief. Insofar as *Western Airlines* could arguably be interpreted as a narrowing of the BFOQ

defense, and that this may indicate some greater likelihood of plaintiff's eventual success on the merits, *see Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir.1977), the court has considered *Western Airlines* before reaching its decision. However, the court finds that even a strained liberal interpretation of *Western Airlines* cannot overcome the Supreme Court's strong admonition that injunctive relief should only rarely be issued in governmental cases.

injunctive relief in a governmental employee case should only be extended in the most extreme cases.

■ Plaintiff also claims that the magistrate erred in finding that plaintiff had not shown irreparable injury. Plaintiff cites two illustrations of his allegedly "irreparable" injury: (1) that plaintiff is unable to keep current with developments at the Wildlife Department and (2) that plaintiff is suffering emotional problems from his compelled retirement. The Supreme Court, however, in *Sampson* made clear that the types of injuries that are common to all discharge cases cannot form a sufficient basis for preliminary injunctive relief in a governmental employee case. Thus, in *Sampson* the Court found that neither loss of reputation, and the attendant emotional problems, nor loss of income, afforded a basis for a finding of irreparable injury. 415 U.S. at 89, 94 S.Ct. at 952. *See also Ferrell v. Durham*, 569 F.Supp. 16 (M.D.N.C.1983); *Farkas v. New York State Department of Health*, 554 F.Supp. 24, 27 (N.D.N.Y.1982) ("[f]or preliminary injunctive relief to issue, then, plaintiff must demonstrate some harm other than that which is inherent in [the adverse personnel decision]"). Magistrate Currie correctly determined plaintiff's injuries to be of the type common to all compelled retirement cases, and therefore, an inadequate basis for injunctive relief. Accordingly, plaintiff's objection is without merit.

Plaintiff next claims that Magistrate Currie incorrectly relied on *Fuller v. Highway Truck Drivers*, 228 F.Supp. 287 (E.D.Pa.1964), *aff'd*, 428 F.2d 503 (3d Cir.1970) because the type of damages addressed in *Fuller* i.e., pain, suffering and serious inconveniences, are not compensable in an ADEA claim. Although this court notes that some courts *do* permit recovery for pain and suffering in an ADEA claim, *see, e.g., Hassan v. Delta Orthopedic, Inc.*, 476 F.Supp. 1063 (E.D.Cal.1979), circuit courts of appeals have uniformly rejected such

recovery. *See Hill v. Spiegel, Inc.*, 708 F.2d 233, 236 (6th Cir.1983). Thus, this court would agree with plaintiff that if the magistrate's report suggested that plaintiff could eventually be compensated for such injuries it was erroneous. However, any such error arose from merely superfluous language in the report, and does not alter the magistrate's overall conclusion, grounded in *Sampson*, that such injuries do not constitute irreparable injury. Accordingly, the error, if any, was immaterial to the magistrate's final recommendation.

Plaintiff's next objection curiously asserts that the magistrate misinterpreted plaintiff's reliance on *EEOC v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983). Plaintiff now claims, despite his earlier vague assertions, that his only reliance on this case was to show that the state had no tenth amendment defense to this action.[3] It is, of course, true that in *EEOC v. Wyoming* the Supreme Court rejected the state's tenth amendment defense to an ADEA claim involving a game warden. However, even construing *EEOC v. Wyoming* for the proposition for which it is now offered by plaintiff does not affect, or alter, the magistrate's original recommendation that preliminary injunctive relief was inappropriate. Thus this objection has no merit.

■ Plaintiff next objects that the magistrate overlooked the affidavit of plaintiff's personal physician, Dr. Burgess, (Plaintiff's Exhibit 3) which stated that plaintiff was able to carry on the duties of Conservation Officers. Plaintiff claims that such an affidavit indicates that persons in plaintiff's position can be dealt with on an individual basis, and contraverts the assertions of defendant's experts that individualized treatment is not feasible. At the outset it should be noted that, for purposes of establishing a BFOQ defense, the critical inquiry, is not simply whether it is *factually impossible* to deal with persons over sixty-five on an individual basis but

**3.** It is interesting to note that the defendant SCW & MRD has never injected a tenth amendment issue into this case.

rather, whether there is a "factual basis for believing that all or substantially all persons [age sixty five and over] would be unable to perform safely and efficiently the duties of [a Conservation Officer] *or* [whether] it is *impossible or impracticable* to deal with persons over [age sixty five] on an individual basis." *Western Airlines v. Criswell*, — U.S. —, 105 S.Ct. 2743, 2751–52, 86 L.Ed.2d 321 (1985); *Arrett v. Grisell*, 567 F.2d 1267 (4th Cir.1977).

With respect to plaintiff's argument that the affidavit indicates the feasibility of individual treatment, there is a significant difference in possibility and practicality between a long-time treating physician's ability to render such an opinion, for one single worker and an employer's ability to secure such an opinion for hundreds of employees. Thus, plaintiff's argument is not particularly persuasive.

■ Further, it will not avail plaintiff to protest that the affidavit proves his capacity for the job. The affidavits of Drs. Antlitz and Lind admit that although there may be a few older persons, perhaps persons such as plaintiff, who can safely and efficiently perform the duties of a Conservation Officer, substantially all persons age fifty-five and older cannot do so because of the risk of undetectable coronary artery disease. Plaintiff's own physician did not even address this consideration in his affidavit, but instead concentrated solely on plaintiff's own physical capacity for the job. However, for purposes of the BFOQ defense in an ADEA claim, it is essential to look at the qualifications of "all or substantially all persons" in the job, *see Western Airlines*, — U.S. —, 105 S.Ct. 2743, 86 L.Ed.2d 321, and not one single plaintiff. Thus, the magistrate correctly concluded that, in fact, plaintiff offered no expert testimony or affidavit controverting defendant's experts' statements regarding coronary artery disease affecting older workers in general. Moreover, although at trial plaintiff may succeed in convincing a jury that a BFOQ has not been proved, at the preliminary injunction state the plaintiff's likelihood of success on the merits is only one of several factors to consider. Thus, this court accepts the magistrate's treatment of the expert affidavits submitted in this case.

■ The plaintiff also objects to Magistrate Currie's finding of some harm to the defendant should plaintiff be reinstated to his position. The magistrate concluded that reinstatement of plaintiff would disrupt the filling of the twelve vacant Conservation Officer positions. Although plaintiff claims that his reinstatement would not prejudice this process, plaintiff offers no evidence to support this statement. Indeed, the affidavit of Mr. Chastain, (Plaintiff's Exhibit 2) belies this contention. This affidavit indicates that hiring for Conservation Officer positions is performed only on an annual cycle, with testing and screening due to be completed by January 19, 1986 for the twelve currently vacant positions. Should the state refrain from hiring one employee, and then plaintiff eventually fails on his ADEA claim, the state would undergo some inconvenience in hiring an employee out of the normal hiring cycle.

In addition, plaintiff points to Mr. Chastain's testimony indicating that there is a "severe" shortage of officers in the Piedmont area. Plaintiff claims, therefore, that the state would benefit from plaintiff's reinstatement. After a careful review of the record, this court finds no support for plaintiff's statement. In fact, Mr. Chastain's testimony indicated that county lines are unimportant in assigning officers to certain areas, and that officers are regularly traded across county lines. Thus, in contrast to plaintiff's claim of a "severe" shortage in officers in the Piedmont area, the record in fact indicates only twelve vacancies existing *statewide*. Further, as the record discloses, personnel for those vacancies are currently being recruited.

The magistrate also opined that "an injunction would, in all likelihood, affect the application of the retirement statute to other Conservation Officers ..." Plaintiff now claims that there is nothing in the record to support the magistrate's conclu-

sion. However, the record reflects that at least one other individual, Mr. Into,[4] would immediately move for a preliminary injunction in another case should this preliminary injunction be granted. Further, at least six other Conservation Officers are scheduled to be retired on June 30, 1986, thus posing at least a possibility that similar relief may be requested by those individuals. Even if the record is not as well amplified on this point as plaintiff may desire, there is a basis in fact for the magistrate's determination. Thus, plaintiff's objection is without merit.

■ Plaintiff next asserts that the magistrate erred in concluding that the public interest would not be served by enjoining application of a state statute that arguably has as its purpose the assurance that Conservation Officers are able to perform their jobs safely and efficiently. The magistrate's conclusion was premised, in part, on the theory that undetectable coronary heart disease, primarily affecting older workers, might arguably impair a Conservation Officer's ability to perform his duties. Plaintiff objects that those Conservation Officers who had been stricken by heart disease in the past, were predominately below forty-five years of age, and not in the line of duty, when stricken. At best it can be said that the record is unclear on this point. Mr. Chastain conservatively estimated that at least ten to fifteen Conservation Officers had suffered heart attacks in the last ten years, although he was unsure of the ages and on/off duty status of the affected individuals. Further consideration of the issue would be premature at this time, and plaintiff will be afforded an opportunity at trial to show that there is no factual basis for recognizing the coronary heart disease theory advanced by the state. Moreover, as repeatedly pointed out above, plaintiff's objection goes only to one of several factors entering into the preliminary injunction balancing equation.

Plaintiff's last request is for this court to hold a *de novo* hearing on his motion for a preliminary injunction. Title 28, U.S.C., Section 636(b)(1)(A) allows a judge to reconsider any pretrial matter where the magistrate's action is "clearly erroneous or contrary to law." Because the court concludes that the magistrate's report and recommendation is well-based, plaintiff's request for a *de novo* hearing is denied.

In sum, the court concludes that the type of relief requested by plaintiff is extraordinary in nature, and not justified on the grounds shown herein. Denial of plaintiff's motion should not, however, be construed as an exposition of the court's opinion concerning the merits of the case.

Based on the foregoing reasons and cited authorities, IT IS THEREFORE ORDERED that plaintiff's motion for a preliminary injunction be denied.

---

4. Mr. Into is plaintiff in a similar ADEA claim now pending before the Honorable Matthew J.

Perry, *Doive J. Into, Sr. v. South Carolina Wildlife & Marine Resources Dept.*, C/A 83–2849–0.